UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TRACI IVELENE GLAUSIER, LAUREN
McCLAIN, COELEEN BENDER, KEN
KEYES, VICTORIA LIVENGOOD,

          Plaintiffs,

-vs-                                Case No.  5:11-cv-Oc-416-10PRL

A+ NURSETEMPS, INC., PRIME STAFF
HOLDINGS, LLC, STAFF AMERICA, INC.,

          Defendants.

_____/

## MEMORANDUM OPINION

This case began in 2011 as a collective action under the Fair Labor Standards Act to recover unpaid overtime compensation.[1]

### I    Procedural Background

The Plaintiffs were, at all material times, health care workers in Florida.  The Defendant A+ Nursetemps, Inc. is (or was) a nurse registry/medical staffing agency that regularly referred the Plaintiffs as shift workers to various health care providers in Florida.  A+ Nursetemps treated the Plaintiffs as independent contractors for purposes of the FLSA, not as employees; but the Amended Complaint (Doc. 26) alleged that the Plaintiffs were, in fact, employees of Defendant A+ Nursetemps, Inc.,

---

[1]    The complaint was initially filed in state court on June 8, 2011, and was removed to this court (within thirty days after service) on July 20, 2011 (Docs. 1 and 2).  The named plaintiffs were Sally Hatfield and Traci Iveline Glausier. Three additional plaintiffs later opted in – Lauren McClain, Coeleen Bender and Ken Keyes (Docs. 14, 15 and 16); and the Amended Complaint (Doc. 26) added Victoria Livengood as a plaintiff.

and that they had not been paid overtime compensation that was due to them under the FLSA.

On June 20, 2013, the court granted (Doc. 98) the Plaintiffs' motion for summary judgment (Docs. 83-84) and directed the Clerk to enter judgment. Amended final judgments in favor of the Plaintiffs were subsequently entered on August 27, 2013 (Docs. 109 and 110). No appeal was taken and those judgments became final, but they remain unsatisfied to this day.[2]

On November 21, 2013, after the amended judgments became final, the Plaintiffs filed a motion for an order of impleader and proceedings supplementary (Doc.111) seeking to implead Prime Staff Holdings, LLC and Staff America, Inc., as successor entities allegedly responsible for payment of the judgments against A+ Nursetemps, Inc.[3] That motion was granted, and those two entities were served with process and were brought into the litigation as Defendants. The successorship issue was then tried before the court in a bench trial, and the case is ready for decision.

---

[2]      Excluding Plaintiff Sally Hatfield, who voluntarily dismissed her claim (Docs. 84 and 100), the amended judgment (Doc. 109) awarded damages for unpaid wages and liquidated damages to the remaining five Plaintiffs in the following, aggregated amounts, respectively: Victoria Livengood, $20,508.18; Traci Ivelene Glausier, $7,091.08; Coeleen Bender, $24,926.00; Lauren McClain, $13,255.00; and Kenneth Keyes, $8,954.00. The total amount of that judgment is $74,734.26. The other amended judgment (Doc. 110) awarded attorney's fees ($61,927.50) and costs ($8,847.53) totaling $70,775.03 to the Plaintiffs jointly. The total of the two amended judgments is $145,509.29 not including accrued interest.

[3]      See Rule 69(a)(1), Federal Rules of Civil Procedure, and Florida Statute § 56.29.

II    The Facts

A+ Nursetemps, Inc., was incorporated in Ohio in 2001.  The corporation was wholly owned by its President, Michael J. Arthur, who conducted all of its business.  The company operated in Ohio, and later in Florida, as a labor staffing agency in the health care industry.  It maintained a nurse registry under Florida law and supplied nurses and other health care workers to hospitals and other clients pursuant to staffing contracts with those clients.  Under the staffing contracts, A+ Nursetemps would bill its clients for the hours of work performed by the nurses for the clients, and would then pay the nurses at rates either fixed by A+ Nursetemps or, in some cases, rates negotiated by A+ Nursetemps with the nurses individually.  In conducting its business in this mode, A+ Nursetemps treated the nurses as independent contractors, not as its employees, and it did not itself keep records of, or pay for, any overtime hours worked by the nurses in the medical facilities of the A+ Nursetemps clients.

A+ Nursetemps' nurse staffing business in Florida was conducted primarily in North Central Florida, with offices located at 2008 Highway 44 West, Inverness, Citrus County, Florida.[4]

It appears that substantial legal and financial difficulties began for A+ Nursetemps, Inc., and Michael J. Arthur, individually, in 2007 and ultimately culminated in 2013.

---

[4]    A+ Nursetemps, Inc. was licensed under Florida law as a nurse registry and was domesticated as a Florida corporation in 2008.

On May 8, 2007, the Department of Labor filed an action in this court against A+ Nursetemps, Inc., and Arthur, individually, claiming a violation of the FLSA due to the non-payment of overtime compensation to its nurse employees who were wrongly classified as independent contractors.[5]   The complaint sought both damages and injunctive relief, and was initially resolved by the entry of a consent judgment and decree on November 25, 2008.   The case remained dormant after entry of the consent judgment for three and a half years until May 22, 2012.   On that date the Department of Labor filed a motion for an order to show cause why the Respondents should not be held in contempt for non-payment of overtime compensation to its nurses in violation of the injunction.

In the meantime, the complaint in this case had been filed on June 8, 2011, and was being actively litigated by the Plaintiffs when, three months later on September 6, 2011, Michael J. Arthur formed Prime Staff Holdings, LLC, a Florida Limited Liability Company.   Arthur was the sole principal of Prime Staff Holdings, LLC and its address was listed with the State as 2020 Highway 44 West, Inverness, Florida.   (The business address of A+ Nursetemps, Inc., was 2008 Highway 44 West, Inverness, Florida.)   Six weeks later, on October 24, 2011, Prime Staff Holdings, LLC, entered into a stock purchase agreement with Staff America, Inc., an Indiana corporation wholly owned by one Susan Brennan.   Under the terms of that agreement, all of the

---

[5]     United States Department of Labor v. A+ Nursetemps, Inc., and Michael J. Arthur, Case No. 5:07-cv-182-Oc-10PRL.   The Court may take judicial notice of its own files and records in other proceedings.   Federal Rule of Evidence 201(b)(2) and (c)(1); State of Florida Board of Trustees of Internal Improvement Trust Fund v. Charley Toppino & Son, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

stock of Staff America, Inc., was transferred to Prime Staff Holdings, LLC, in exchange for $10.00 and a 2½% interest for Brennan in Prime Staff Holdings, LLC. Then, just over two weeks later on November 10, 2011, Arthur registered Staff America, Inc., in Florida (together with Staff America Health, Inc., as an alternate corporate name) for the purpose of conducting a "Medical Staffing" business at 2020 Highway West, Inverness, Florida.

Michael Arthur's stated purpose in forming Prime Staff Holdings, LLC, was to use it as a holding company to purchase the stock of Staff America, Inc., for a nominal outlay of cash and Brennan's small interest in Prime Staff Holdings, LLC, in order to continue his medical staffing business and also to gain entry into the employee staffing market generally inasmuch as Staff America, Inc., had been doing business in that broader market in Indiana.

All of the foregoing events occurred while this case was being litigated and the consent judgment and decree in the Department of Labor case against A+ Nursetemps, Inc., remained in force.  Then, on May 22, 2012, the Department of Labor filed its motion for a contempt citation to enforce the injunction entered in its case; and, from that point in May, 2012, until April and May, 2013, the two cases proceeded in parallel.

On April 5, 2013, the court entered its opinion in the Department of Labor case finding for the Plaintiffs (Doc. 92, Case No. 5:07-cv-182-Oc.) and directing the parties to submit a final judgment in keeping with that opinion.  In the period between April 5, 2013, and the entry of judgment on May 21, 2013, against both A+ Nursetemps,

Inc., and Michael J. Arthur, individually, Arthur ceased doing business as A+ Nursetemps, Inc.  On May 3, 2013, Arthur, knowing that judgment was about to be entered in the Department of Labor case, wrote a letter as President of A+ Nursetemps at 2008 Highway 44 West, to himself as the principal of Staff America, Inc., at 2020 Highway 44 West (Plaintiffs' Trial Exhibit 9), the text of which was:

> May 3, 2013
> Staff America
> 2020 Highway 44 West
> Inverness, FL 34453
>
> Dear Michael,
>
> Due to circumstances beyond our control, NurseTemps will cease operations at 5:00pm on May 3, 2013.  NurseTemps will terminate its lease on 2008 Highway 44 West and vacate the premises on May 4 but would like permission to store its furniture and equipment assets in the front office until a Receiver makes arrangements to pick it up.
>
> Sincerely,
> [signature]
> Michael J. Arthur
> President
> NurseTemps

At the same time, as a result of litigation that had been brought against A+ Nursetemps, Inc. and Arthur by another labor staffing company in the state courts of Indiana, an order was entered on May 6, 2013, in that litigation appointing a receiver for A+ Nursetemps, Inc. (Defendants' Trial Exhibits 1 and 2).

Then, on May 24, 2013, counsel for A+ Nursetemps, Inc., in this case filed a motion for leave to withdraw (Docs. 90 and 91), and on May 30, 2013 Arthur filed a

voluntary Chapter 7 petition for bankruptcy (Doc. 93).[6]  Finally, on August 27, 2013, the judgments in favor of the Plaintiffs and against A+ Nursetemps, Inc. were entered in this case (See footnote 2, supra).   In summary, the sequence and temporal proximity of the significant events is:

| | |
|---|---|
| May 8, 2007 | Department of Labor (DOL) sues A+ Nursetemps and Arthur, individually. |
| Nov. 25, 2008 | Consent judgment and injunction decree entered in DOL suit. |
| June 8, 2011 | This suit was filed against A+ Nursetemps. |
| Sept. 6, 2011 | Arthur forms Prime Staff Holdings, LLC. |
| Oct. 24, 2011 | Prime Staff Holdings, LLC acquires stock of Staff America, Inc. |
| Nov. 10, 2011 | Arthur registers Staff America to do "Medical Staffing" business at same general location as A+ Nursetemps, Inc. |
| May 22, 2112 | DOL seeks show cause order in DOL Suit against A+ Nursetemps and Arthur. |
| April 5, 2013 | Opinion entered in DOL suit finding for Plaintiff. |
| May 3, 2013 | A+ Nursetemps ceases business. |
| May 6, 2013 | Receiver appointed for A+ Nursetemps in Indiana. |
| May 21, 2013 | Judgment entered in DOL suit against A+ Nursetemps and Arthur, individually. |
| May 24, 2013 | Counsel for Defendants withdraw from this case. |

---

[6]     Case No. 3:13-bk-03310-PMG, Middle District of Florida, Jacksonville Division, filed May 30, 2013.  Arthur was not, and is not, a party to this action, and the Plaintiffs in this case were not, and are not, parties in the Department of Labor litigation.  Arthur's petition in bankruptcy was prompted by the judgment entered in the Department of Labor case on May 21, 2013, and the litigation in Indiana.  A+ Nursetemps, Inc. has never taken bankruptcy.

| May 30, 2013 | Arthur files for bankruptcy. |
| Aug. 27, 2013 | Judgments entered in this case against A+ Nursetemps. |
| Nov. 21, 2013 | Proceedings supplementary begin in this case against Prime Staff Holdings, LLC and Staff America, Inc. |

Plaintiff's Trial Exhibit 11 is a spreadsheet covering January, 2013, through April, 2014 – the last few months of operation by A+ Nursetemps, Inc., and the continuing operations of Staff America, Inc. in the same business, from the same general location, owned and managed by the same person, Michael J. Arthur.  The spreadsheet shows that during the last few months of its operations, A+ Nursetemps, Inc. employed <u>169</u> nurses, <u>111</u> of whom (<u>66</u>%) were thereafter employed by Staff America, Inc.[7]

The Court therefore finds and concludes as a fact that Prime Staff Holdings, LLC, and Staff America, Inc., were both (and are both) entities that were created as intended successors for the purpose of continuing and expanding[8] Mr. Arthur's personal business endeavor of providing medical/nurse staffing services in the health care industry in North Central Florida from and after May 3, 2013, when A+

---

[7]    Staff America's total complement of nurses during that sixteen month period was <u>432</u> The <u>111</u> nurses who had previously worked for A+ Nursetemps, Inc., comprised <u>25</u>% of Staff America's workforce.

[8]    The fact that the business of A+ Nursetemps, Inc. and most of its employees were folded into the expanding business enterprise of Staff America, Inc. does not logically or legally affect the status of Staff America, Inc. as successor to A+Nursetemps, Inc. with respect to the specific liability involved in this case.

Nursetemps, Inc., ceased operations,[9] and to do so without the baggage of the judgments entered against A+ Nursetemps, Inc.

## III The Applicable Law

In order to avoid confusion in identifying the law governing the merits of this dispute, it is helpful to first discuss a body of law that is <u>not</u> involved.

### A.

In the parties' pretrial statement the Plaintiffs stipulated that "[n]o merger or transfer of assets has occurred involving A+ Nursetemps, Inc. and Prime [Staff Holdings, LLC] or SAI [Staff America, Inc.]." (Doc. 137, Paragraph 9, page 6).  The Defendants seize upon this concession to argue that under general corporate law and the law of Florida governing successorship liability, there must be a merger or transfer of assets; and, therefore, the lack of either in this case completely undermines the Plaintiffs' cause of action or theory of recovery.  There are three reasons that this argument is unpersuasive.

First, having heard the evidence presented at trial, the court concludes that the stipulation concerning the lack of a transfer of assets must be interpreted, in view of the evidence, to mean the absence of a transfer of real or tangible property <u>that might be subject to levy of execution</u> in the hands of A+ Nursetemps, Inc.  This interpretation is required because the evidence at trial (Plaintiffs' Trial Exhibit No. 11), clearly shows that there was, in fact, a transfer to Staff America, Inc. of the lists of employees of A+

---

[9]      The Nurse Registry Certificate issued by the State of Florida to Staff America Health, Inc., authorized nurse staffing operations in Alachua, Citrus, Hernando, Lake, Levy, Marion, Sumter and Suwannee Counties (Plaintiffs' Trial Exhibit 7).

Nursetemps, Inc., and the nature of both businesses as employee staffing agencies is such that a list of nurses available for job assignments (and the established relationships with them) is the heart and soul asset or goodwill of the business itself.

Second, and alternatively, the suggestion that an assets transfer is an essential element of any claim of successor liability is a misinterpretation of the decisional law on the subject.  In Bernard v. Key Manufacturing Company, Inc., 409 So.2d 1047 (Fla. 1982), the Supreme Court of Florida considered whether a products liability exception should be made to the general corporate rule that the purchaser of a corporate predecessor's assets (as distinguished from a purchaser of the predecessor's stock) does not assume the debts of the predecessor.  The court declined to modify the general rule of successor liability in that way, and adhered to the general rule which it stated to be as follows:

> The vast majority of jurisdictions follow the traditional corporate law rule which does not impose the liabilities of the selling predecessor upon the buying successor company unless (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.

Bernard, 409 So.2d at 1049 (citations omitted).  See also Centimark Corp. v. A to Z Coatings & Sons, Inc., 288 Fed. Appx. 610, 614 (11th Cir. 2008) (to the same effect, citing Bernard).[10]  Notably, the statement of the rule by these authorities as applicable to successorship situations (other than stock purchases) is expressed as four distinct

---

[10]     Unpublished opinions of the court of appeals are not binding precedent but may be cited as persuasive authority.  Fed. R. App. P. 32.1; Eleventh Circuit Rule 36-2.

exceptions to the general rule of non-liability of successors – each exception being separated by an "or" rather than an "and."  As such, any one or more of the four exceptions might apply in a given case in the  absence of another exception, and without regard to whether or not the successor actually purchased the assets of the predecessor.  This, would be true, for example, in a case like this one in which no assets subject to levy changed hands, but the successor is clearly a mere continuation of the predecessor in every relevant way including, in particular, common ownership by the same principal or principals.  Unfortunately, however, there is a lack of clarity about this due to <u>dicta</u> in a couple of successorship decisions relied upon by the Defendants.[11]

Third, and in any event, it is unnecessary in this case to resolve any issues concerning the transfer of assets or any other uncertainties in the general corporate law of successorship liability because none of that law applies here.  This is an FLSA case (29 U.S.C. § 201 <u>et</u> <u>seq</u>) in which jurisdiction is predicated upon the presence of a federal question (28 U.S.C. § 1331), not diversity of citizenship (28 U.S.C. § 1332) and the judgments were entered to enforce an FLSA liability.  The substantive rule of decision, therefore, is supplied by Federal law, and the Supreme Court and the courts

---

[11]    These cases are <u>Bud Antle, Inc. v. Eastern Foods, Inc.</u>, 758 F.2d 1451 (11th Cir. 1985) and <u>Coffman v. Chugach Support Services, Inc.</u>, 411 F.3d 1231 (2005).  In <u>Bud Antle, Inc.</u>, the court said, without citation of authority, that "[a]ll four of these exceptions require a transfer of assets in order to hold the acquiring corporation liable."  758 F.2d at 1457.  A similar statement was made in <u>Coffman</u>, 411 F.3d at 1237.  In both of these cases, however, the basis of the decision was the lack of any common identity of ownership and control as between the prior corporation and the successor (<u>Bud Antle, Inc.</u>, 758 F.2d at 1458-59), or as stated in <u>Coffman</u>, there was no continuity of ownership and control, and no predecessor-successor relationship.  (<u>Coffman</u>, 411 F.3d at 1237).   Both of these decisions are, therefore, factually distinguishable from this case on that critical basis.

of appeal have clearly fashioned a separate and more flexible body of law governing successorship liability under remedial Federal labor laws including the FLSA.

B.

In its decision in In re National Airlines, Inc., 700 F.2d 695 (11th Cir. 1983), the court of appeals confronted two issues: (1) the federal standard for determining successorship liability in the enforcement of federal labor laws; and (2) whether that standard also applies to Title VII claims when there is an issue of predecessor-successor liability.  After canvassing the Supreme Court decisions addressing the first issue the court declared that "the test for successor liability is fact specific and must be conducted in light of the facts of each case and the particular legal obligation which is at issue . . . [T]here is, and can be, no single definition of successor which is applicable in every legal context.  A new employer, in other words, may be a successor for some purposes and not for others."  In re National Airlines, Inc., 700 F.2d at 698 (internal quotations and citation omitted).[12]

With specific reference to the FLSA, the Eleventh Circuit has not decided whether the federal standard of successorship liability should be applied in FLSA cases, but as held in Cuervo v. Airport Services, Inc., 984 F. Supp. 2d 1333 (S.D. Fla. 2013), every other court to consider the issue has concluded that it does; and, further, in view of In re National Airlines, Inc., there is no reason to believe that the Eleventh Circuit would choose to stand alone in opposition to that weight of authority.  Indeed,

---

[12]    The court went on to hold that the remedial interest underlying the relaxed rule of successorship liability in labor cases was "equally compelling" in Title VII litigation.  In re National Airlines, Inc., 700 F.2d at 698.

as its very title suggests, the Fair Labor Standards Act is a remedial act designed to assure minimum wages to those workers on the low end of the labor market, and overtime pay for non-exempt hourly paid employees in the labor market generally.

The leading court of appeals decision thus far on the issues involved in this case is Teed v. Thomas & Betts Power Solutions, LLC, 711 F.3d 763 (7th Cir. 2013). The court first recognized that "when liability is based on a violation of a federal statute relating to labor relations or employment, a federal common law standard of successor liability is applied that is more favorable to plaintiffs than most state-law standards to which the court might otherwise look." Teed, 711 F.3d at 764 (citations omitted). The court then identified the components of the federal standard as being:  (1) whether the successor had notice of the pending lawsuit and the possible liability; (2) whether the predecessor would have been able to provide the relief sought in the lawsuit before the sale; (3) whether the predecessor could have provided the relief after the sale; (4) whether the successor can provide the relief sought in the suit; and (5) whether there is continuity between the operations and work force of the predecessor and successor which favors successor liability on the theory that nothing has really changed. (Id. at 765-766).[13]

Applying those tests here, it is obvious that both Prime Staff Holdings, LLC and Staff America, Inc. had notice of this suit in the person of Mr. Arthur.  Indeed, Arthur's creation of Prime Staff Holdings, LLC and its purchase of Staff America, Inc. (followed

---

[13]     The court concluded by holding that those tests should be applied in FLSA successor liability cases.

by Staff America's commencement of its staffing business at the same location as A+ Nursetemps, Inc. using 66% of Nursetemps' work force) was obviously motivated by the pendency of the lawsuits against A+ Nursetemps, Inc., including this one. Whether the predecessor, A+ Nursetemps, Inc., could have provided the relief sought in this suit before or after the transition to Staff America occurred, the answer is no. Whether the successors can provide the relief sought – satisfaction of the judgments entered in this case – the answer would appear to be yes.  The record suggests that Staff America, Inc., under Mr. Arthur's management, is a thriving nurse registry/staffing agency, and there is nothing in the record to the contrary.  And, finally, as to whether there is continuity between the operations and work force of the predecessor and the successor, there is a clear identity between the two in terms of the nature of the business and the market area being served as well as the ownership and  management of the business, plus the fact that a majority of the employees of the predecessor are engaged by the successors.

The circumstance that two of the components of the standard set out in Teed are not met here – the lack of financial responsiveness by the predecessor before and after the transition – is not determinative.  On the contrary, both of those features were not met in Teed either, but the court nevertheless concluded – as this court does in this case – that successorship liability applies.  Notice of the claim and substantial continuity of the operations are the two most significant considerations.  See In re National Airlines, Inc., 700 F.2d at 698.

Conclusion

Having concluded that Prime Staff Holdings, LLC, and Staff America, Inc. are successors in interest of A+ Nursetemps, Inc., insofar as the Amended Judgments previously entered in this cause are concerned (Docs. 109 and 110), and that such entities are liable to the Plaintiffs for such judgments together with A+ Nursetemps, Inc., the appropriate remedy is to direct the Clerk to reenter such judgments adding Prime Staff Holdings, LLC, and Staff America, Inc. as judgment debtors.  The Clerk is so Directed.  The Clerk is then Directed to terminate any pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 1st day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Mari Jo Taylor, Courtroom Deputy