UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SALLY HATFIELD, TRACI IVELENE
GLAUSIER, VICTORIA LIVENGOOD,
And similarly situated individuals,

      Plaintiffs,

v.

A+NURSETEMPS, INC., a Florida for Profit
Corporation doing business as NURSETEMPS,
INC., PRIME STAFF HOLDINGS, LLC, and
STAFF AMERICA, INC., as successor entities,

      Defendants.

_____/

Case No.: 5:11-CV-416-OC-10-TBS

**MOTION TO STAY EXECUTION PENDING OUTCOME OF APPEAL
OR IN THE ALTERNATIVE
APPROVE AMOUNT OF SUPERSEDEAS BOND**

Pursuant to Fed. R. Civ. P. 62(f) and Fla. R. App. P. 9.310(a), Defendants, PRIME

STAFF HOLDINGS, LLC and STAFF AMERICA, INC., hereby request that this Court stay

execution on the Second Amended Final Judgment [DE 154] and Second Amended Final

Judgment of Attorney's Fees [DE 155] that were entered in this action on the 4th day of May,

2015 and in support thereof states:

1.     This Court's determination that the federal common law standard of successor

          liability does not require a transfer of assets between the alleged predecessor and

          successor is an expansion of the previous doctrine as reflected in the case law as a

          whole and therefore a matter of first impression for the Eleventh Circuit Court of

1

Appeals.   The Eleventh Circuit Court of Appeals has previously rejected such an expansion in the context of a USERRA claim.[1]

2.    This case was brought as a result of the failure of A+ NurseTemps, Inc. to satisfy the underlying judgment. A+ NurseTemps, Inc. was forced to discontinue business operations when its payroll account was garnished thereby precluding it from continuing to earn income.[2]   Execution of the underlying Judgments in this matter could result in a similar fate for STAFF AMERICA INC.   Even assuming that Plaintiffs understand the previous lesson of killing the golden goose, STAFF AMERICA, INC.'s industry is extremely competitive and if STAFF AMERICA, INC.'s clients are burdened with responding to discovery requests or attempts at execution by Plaintiffs, said clients will simply take their staffing needs elsewhere thereby irreparably damaging STAFF AMERICA INC.'s business.

Moreover, in the event that execution is permitted to proceed, and amounts are paid to Plaintiffs in this matter, if the Eleventh Circuit should reverse the judgment, amounts paid to the individual Plaintiffs will be difficult to retrieve due to the number of plaintiffs that will need to be pursued, protections against collection from individuals and the expectation that the Plaintiffs are unlikely to set aside money paid to them in the event that the Eleventh Circuit should reverse the judgment.

---

[1] The jurisdictional issue regarding the use of proceedings supplementary to establish successor liability also appears to be an expansion of the traditional role of proceedings supplementary.

[2] As a staff placement company A+ NurseTemps, Inc. earns income through the placement of staff, on a temporary basis, with third parties.  If a staff placement company is unable to pay staff, it cannot place staff and therefore cannot earn revenue.

3.    In order to collect the entirety of the amount established by this Court, Plaintiffs will need to allow revenue generated by STAFF AMERICA, INC.'s operations to satisfy the debt over time.  Staying execution efforts in this matter under the terms suggested herein will not substantially injure the other parties interested in the proceeding.

4.    The public interest is served by open access to the Courts and the right to clarity of the issues raised in these matters.

5.    STAFF AMERICA, INC. requests that this Court stay execution of the Court's Second Amended Final Judgment [DE 154] and Second Amended Final Judgment of Attorney's Fees [DE 155] and permit the Eleventh Circuit Court of Appeals to evaluate this matter of first impression.

6.    STAFF AMERICA, INC. proposes to secure this stay of execution through the deposit of $4,000.00 per month, on or before the first day of each month, into the Court Registry.  In the event the appeal taken in this matter is unsuccessful, Plaintiffs will receive the totality of the funds deposited.  If the appeal is successful, STAFF AMERICA INC. will receive the totality of the funds collected.

In the alternative to granting a Stay of Execution based upon the terms outlined in Paragraph 6, Defendants. PRIME STAFF HOLIDNGS, LLC and STAFF AMERICA, INC. ask that this Court establish the amount required in a supersedeas bond to stay both the Second Amended Final Judgment [DE 154] and Second Amended Final Judgment of Attorney's Fees [DE 155] as $81,834.01 comprising principal amount ($74,734.26) plus two years interest ($7,099.75) as required pursuant to Fed. R. Civ. P. 62(f) and Fla. R. App. P. 9.310(b)(1).

3

**Memorandum of Law.**

Although Fed.R.Civ.P. 62 "provides that a supersedeas bond may be used to stay execution of judgment pending appeal, the court has discretion to allow other forms of judgment guarantee." *See* International Telemeter Corp. v. Hamlin Intern. Corp., 754 F.2d 1492, 1495 (9th Cir. 1985). Rule 62 does not preclude a court from issuing a stay without bond, upon posting of partial bond, upon posting of alternative security or upon such conditions as court deems appropriate. *See* Wunschel & Small, Inc. v. U.S., 554 F.Supp. 444, 445 (U.S. Cl.Ct. 1983). It is within this Court's discretion to fashion a security arrangement that protects the rights of both the judgment creditor and the judgment debtor. *See* Prudential Ins. Co. of America v. Boyd, 781 F.2d 1494, 1498 (11th Cir. 1986).

"If a court chooses to depart from usual requirement of full security supersedeas bond to suspend operation of unconditional money judgment, it should place burden on moving party to objectively demonstrate reasons for such a departure." *See* Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979). "[I]f the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden, the court similarly is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings, which would furnish equal protection to the judgment creditor." *See* id.

In Northwestern Nat. Ins. Co. v. Insco, Ltd., 866 F.Supp.2d 214, (S.D.N.Y. 2011) four factors are identified for consideration when determining whether to grant a stay pending appeal: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of

the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies.  The degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other.  *See* id.

1.   **The legal issues raised in this matter are a matter of first impression and the Courts determination that no asset transfer is required for successor liability is contrary to the Eleventh Circuit's declaration in Coffman.**

As identified by the parties Pre-Trial Statement [DE 137]:

   a.   The Eleventh Circuit has not previously ruled on the issue of whether in an FLSA context successor liability exist in the absence of a merger or transfer of assets that creates a predecessor-successor relationship.

   b.   The Eleventh Circuit has previously ruled that in a USERRA context successor liability in the absence of a merger or transfer of assets that creates a predecessor-successor relationship is beyond the limits of the equitable principles that underlie the successor liability doctrine.

In its Memorandum Opinion [DE 153] determining, in proceedings supplementary, that Prime Staff Holdings, LLC and Staff America, Inc. are obligated by the Doctrine of Successor Liability for the previous judgment entered in this case against A+ NurseTemps, Inc. this Court:

   a.   Determined that because this matter involved an FLSA claim in the original action against A+ NurseTemps, Inc., it was "unnecessary in this case to resolve any issues concerning the transfer of assets or any other uncertainties in the general corporate law of successorship liability because none of that law applies here."

b. Elected to apply what it described as a "more flexible body of law governing successorship liability under remedial Federal labor laws including FLSA" and applied the federal common law standard of successor liability set forth in <u>Teed v. Thomas & Betts Power Solutions, LLC</u> 711 F.2d 763 (7th Cir. 2013) in determining that successor liability existed.

This Court cites to <u>In re National Airlines, Inc.</u>, 700 F.2d 695 (11th Cir. 1983)[3]; <u>Cuervo v. Airport Services, Inc.</u>, 984 F. Supp 2d 1333 (S.D. Fla. 2013)[4]; and <u>Teed v. Thomas & Betts Power Solutions</u>, LLC 711 F.2d 763 (7th Cir. 2013)[5] in its discussion of the application of the federal common law standard of successor liability in the absence of a transfer of assets. Importantly, all three of these cases factually involve a transfer of assets from the alleged predecessor to the alleged successor.

In applying the federal common law standard of successor liability, <u>Teed</u> specifically recognizes that "Had Packard remained an operating subsidiary of Bray, its net income (about $5 million a year) would have belonged to the bank, while if its assets had been sold piecemeal there is no successor liability, because of the lack of continuity between predecessor and successor; for when a company is broken up and sold piecemeal, there is no successor to transfer the company's liability to." In <u>Coffman v. Chugach Support Servs., Inc.</u>, 411 F.3d 1231, 1237 (11th Cir. 2005), the Eleventh Circuit was asked in a labor case (USERRA) to impose successor liability in the absence of a transfer of assets between the alleged predecessor and successor. <u>Coffman</u> notes "Not surprisingly, Coffman fails to cite one case in which a court imposed

---

[3] Pan-Am acquired National Airlines through merger.
[4] "Proficient began to operate in its place and service ASI's clients by using ASI's equipment, personnel, management, and assets."
[5] Thomas & Betts Corporation "bought Packard's assets and placed them in a wholly owned subsidiary, the substituted defendant. Essentially that company is Packard renamed…"

successor liability when no predecessor-successor relationship existed."[6]   The Eleventh Circuit

determined that in the absence of a transfer of assets between the two subject companies analysis

of a successor liability test was "unnecessary and improper."[7]

    While the Court has stated that the Eleventh Circuit's opinion in Coffman is factually

distinguishable on the basis of continuity of ownership and control, the Eleventh Circuit has at a

minimum expressed a belief that successor liability requires a transfer of assets. In light of the

novelty of this issue, this Court should attempt to maintain the status quo while the Eleventh

Circuit considers the issue.

2. **PRIME STAFF HOLIDNGS, LLC and STAFF AMERICA, INC. will be irreparably injured absent a stay.**

    As is evidenced by the Affidavit attached hereto as "Exhibit A", neither defendant

possesses sufficient assets to satisfy the judgment rendered by this Court.   Neither defendant

possesses sufficient assets to obtain a supersedes bond.   A+NURSETEMPS, INC. was forced to

close its operations as a result of a judgment creditor garnishing its payroll accounts thereby

eliminating the ability to pay staff.   If similar collection efforts are undertaken by the Plaintiffs in

this matter during the pendency of this appeal, STAFF AMERICA, INC. would be required to

cease operations.

    Moreover, in the event that execution is permitted to proceed and amounts are paid to

Plaintiffs in this matter, if the Eleventh Circuit were to reverse the judgment the amounts paid to

the individual Plaintiffs will be difficult to retrieve due to the number of plaintiffs that will need

---

[6]See 411 F.3d at 1238.

[7]See id. at 1237.

to be pursued, protections against collection from individuals, and the expectation that the Plaintiffs are unlikely to set aside money paid to them in the event that the Eleventh Circuit should reverse the judgment.

3. **Issuance of the stay requested will not substantially injure the Plaintiffs in this matter and will serve the public interest.**

Plaintiffs' sole possibility of collecting the entirety of the amount established by this Court requires Plaintiffs to allow revenue generated by STAFF AMERICA, INC.'s operations to satisfy the debt over time.   STAFF AMERICA, INC. proposes to secure the stay issued in this matter by paying into the Court registry a monthly amount of $4,000.00 for the duration of the appeal.  In this manner, Plaintiffs will be assured that the delay in execution will not prejudice its collection efforts and STAFF AMERICA, INC. will be assured that its business operations will not be adversely impacted and it will not be required to pursue actions to recover funds from the plaintiffs if the Eleventh Circuit should reverse this Court's determination.  In addition, a stay will serve the public purpose in ensuring that the Plaintiffs do not have to repay amounts in the future and permits the Eleventh Circuit to consider this matter of first impression and bring additional clarity to the successor liability doctrine.

<div style="margin-left:50%">

s/J. Theodore Schatt_____
J. Theodore Schatt
Florida Bar Number 0195782
Schatt & Hesser, P.A.
Post Office Box 4440
Ocala, Florida  34478
Telephone:  (352) 789-6520
Facsimile:  (352) 789-6570
tschatt@schatthesser.com
service@schatthesser.com
Attorney for Prime Staff Holdings, LLC and
Staff America, Inc.
Trial Counsel

</div>

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of May, 2015, a true and correct copy of the foregoing was served by electronic mail to Edwin A. Green, Esquire at tgreen@bmaklaw.com.

s/J. Theodore Schatt
J. THEODORE SCHATT

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

SALLY HATFIELD, TRACI IVELENE
GLAUSIER, VICTORIA LIVENGOOD,
And similarly situated individuals,

      Plaintiffs,                        Case No.: 5:11-CV-416-OC-10-TBS

v.

A+NURSETEMPS, INC., a Florida for Profit
Coporation doing business as NURSETEMPS,
INC.

      Defendants.

_____/

## AFFIDAVIT OF MICHAEL J. ARTHUR

STATE OF FLORIDA
COUNTY OF MARION

      MICHAEL J. ARTHUR, before me on this date, deposes and says:

    1.    I have personal knowledge of the matters set forth herein.

    2.    I am the owner of 95% of the membership interest in Prime Staff Holdings, LLC.

    3.    Prime Staff Holdings, LLC (hereinafter "Prime") is not engaged in any business transactions and has no source of income other than distributions it receives as a result of its ownership of Staff America, Inc. (hereinafter "SAI").

    4.    Prime does not have sufficient assets to satisfy the Judgments entered in this matter.

    5.    Prime does not have sufficient assets to post a supersedes bond for the full amount of the Judgments entered in this matter.

    6.    SAI does not have sufficient assets to satisfy the Judgments entered in this matter.



7.  SAI does not have sufficient assets to post a supersedes bond for the full amount of the Judgments entered in this matter.

8.  Plaintiffs in this matter pursued the issue of successor liability because A+ NurseTtemps, Inc. (hereinafter "A+") was unable to satisfy the Judgment this Court entered.

9.  On or about January 14, 2013, Pinpoint Staffing, LLC (hereinafter "Pinpoint"), obtained a judgment against A+, in a case pending in Superior Court in the State of Indiana which was domesticated in Citrus County, Florida. (Case No.: 2013 CA 000325 A).

10.  In its efforts to collect on its judgment, Pinpoint garnished certain A+ accounts, including the payroll provider used to pay the health care professionals for services rendered by said professionals to third parties under contract with A+.

11.  Without an ability to assure payment to its health care professionals for services rendered, A+ was forced to cease operations on May 3, 2013.

12.  All assets of A+, furniture, business records and equipment, were placed in storage, but ultimately abandoned by the Receiver appointed in the Indiana action.

13.  A+ ceasing operations was devastating to my personal finances and forced me to declare personal bankruptcy on May 30, 2013.

14.  If, during the pendency of the appeal in this matter, Plaintiffs garnish accounts that impact SAI's ability to pay its employees for services rendered, SAI will suffer the same fate experienced by A+.

15.  SAI's ability to satisfy the Judgments rendered in this matter are dependent upon Plaintiffs agreeing to accept a payment plan that permits SAI to pay off the amount of the Judgments over time out of revenue derived through its operations.

16.     Given existing obligations and responsibilities, and the necessity of setting a proposed payment that is obtainable each and every month, SAI can reasonably afford to make monthly payments of $4,000.00 into the Court Registry to serve as collateral for the appeal in this matter.

FURTHER AFFIANT SAITH NAUGHT.

_____

Michael J. Arthur

Sworn to and subscribed before me on this _____ day of May, 2015, by MICHAEL J. ARTHUR, who is personally known to me or has produced _____ as identification and who did take an oath.

J. T. SCHATT
MY COMMISSION # EE 107055
EXPIRES: August 14, 2015
Bonded Thru Budget Notary Services

_____

Notary Public, State of Florida

J T Schatt
_____

Printed name of Notary Public

My Commission Expires: 8/14/15